IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:08-CV-165-D

| | |
|---|---|
| LEONARD J. BAGGETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff Leonard J. Baggett ("plaintiff") challenges the final decision of defendant Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") on the grounds that he is not disabled.[1] The case is before the court on the parties' respective motions for judgment on the pleadings (DE #17, 18). The motions were referred to the undersigned Magistrate Judge for memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

## I. BACKGROUND

### A.   Case History

Plaintiff filed applications for DIB and SSI on 25 January 2005, alleging a disability onset date of 13 January 2005 due to heart disease, high blood pressure, and high cholesterol. Transcript of Proceedings ("Tr.") 42, 53. The application was denied initially on 13 May 2005 and on

---

[1] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

reconsideration on 28 August 2005, and a request for hearing was timely filed on 28 August 2005. *Id.* 28, 30, 35. On 11 October 2007, a hearing was held before an Administrative Law Judge ("ALJ"). *Id.* 198-216.

In a written decision dated 23 October 2007, the ALJ found that plaintiff was not disabled and therefore not entitled to DIB or SSI. *Id.* 16-23. Plaintiff's timely request for review by the Appeals Council was denied on 1 February 2008. *Id.* 5-8. Plaintiff then commenced this proceeding for judicial review on 7 April 2008 pursuant to 42 U.S.C. § 405(g). *See* Compl. (DE #7).

### B. Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The Act goes on to describe disability more specifically in terms of impairments:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2)(A); *accord* 42 U.S.C. § 1382c(a)(3)(B).

The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

2

Case 5:08-cv-00165-D   Document 24   Filed 12/31/08   Page 2 of 16

The burden of proving disability falls upon the claimant. *English v. Shalala,* 10 F.3d 1080, 1082 (4th Cir. 1993).

The disability regulations under the Act ("Regulations") provide the following five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R. § 404.1509 for DIB and *id.* § 416.909 for SSI], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] . . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . .

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass,* 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such

impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523, 416.923. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

### C. Findings of the ALJ

Plaintiff was 46 years old on the alleged onset date of disability and was 49 years old on the dates of the administrative hearing. Tr. 42, 198. Plaintiff's past work experience included work as a long-distance truck driver, electrician helper, certified nursing assistant, and lumber stacker. *Id.* 21.

Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since his alleged onset of disability. *Id.* 18 ¶ 2. At step two, the ALJ found that plaintiff had three medically determinable impairments which were severe within the meaning of the Regulations, 20 C.F.R. §§ 404.1520(c), 416.920(c): status-post myocardial infarction (*i.e.*, heart attack), hypertension, and back pain. *Id.* 18 ¶ 3. At step three, the ALJ found that plaintiff did not have any impairments that met or medically equaled, singly or in combination, one of the impairments listed in Appendix 1 to 20 C.F.R. pt. 404, subpt. P. *Id.* 18 ¶ 4.

At step four, the ALJ determined that plaintiff had the RFC to perform a full range of light work. *Id.* 21 ¶ 6. At step five, the ALJ, applying Medical-Vocational Rule 202.18,[2] found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform. *Id.* 22 ¶ 10.

---

[2] The Medical-Vocational Rules are set out in 20 C.F.R. pt. 404, subpt. P, app. 2.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained

the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

### B. Overview of Plaintiff's Contentions

Plaintiff contends that the ALJ's decision should be reversed because the ALJ erred in his evaluation of plaintiff's RFC and assessment of plaintiff's credibility. Each of these contentions is examined in turn below.

### C. Evaluation of Plaintiff's RFC

Plaintiff contends that the record lacks substantial evidence to support the ALJ's RFC determination that he can perform light work. Plaintiff argues that the record establishes that limitations arising from his impairments prevent him from performing light work, including the need to lie down three to five hours a day to control swelling in his feet and limited mobility due to back pain. The court finds plaintiff's challenge to the ALJ's RFC determination to be meritless.

The Regulations define light work as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). Even if the weight lifted is minimal, a job is considered to be light work when it requires a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls. *Id.* §§ 404.1567(b), 416.967(b).

There is substantial medical and other evidence in the record supporting the ALJ's determination that plaintiff's impairments do not prevent him from performing this level of work. The salient events in plaintiff's medical history begin with his hospitalization in January 2005 for

several days for a heart attack, first at Wayne Memorial Hospital ("Wayne Hospital") and then WakeMed Hospital ("WakeMed"). Tr. 18-19, 102-34. The records of his hospitalization show that a stent was successfully placed in one of his arteries and that another artery, for which a stent was not suitable, could be treated medically. *Id.* 19, 119, 121. Rather than restrictions being placed on his activities, plaintiff was instructed to increase his activities gradually. *Id.* 19, 119.

In April 2005, Muhammed A. Bhatti, M.D., a state agency consulting physician, performed an examination of plaintiff. *Id.* 19, 139-44. He noted that plaintiff reported doing well since his hospitalization and was taking his medication, although he experienced chest pain with increased activity. *Id.* 19, 139. Dr. Bhatti found that plaintiff's blood pressure was under reasonable control, he had a stable chest with no acute cardiopulmonary process, and there was no edema in plaintiff's extremities. *Id.* 19, 141. Plaintiff's neurological and musculoskeletal examinations were within normal limits, and he exhibited a normal range of motion, a normal gait, and the ability to ambulate without any assistive device. *Id.* 19, 141. Again, there is no indication that plaintiff has disabling impairments.

In October 2005, plaintiff underwent a cardiac catheterization at WakeMed for burning in his chest. *Id.* 19, 177, 178. He was stable upon discharge. *Id.* 19, 177.

In July 2007, plaintiff underwent an examination by state agency consulting physician Maqsood Ahmed, M.D. *Id.* 179-90. Plaintiff reported a history of intermittent chest pain with shortness of breath. *Id.* 20, 179. Dr. Ahmed found that plaintiff had regular heart rate and rhythm, but a history of uncontrolled hypertension secondary to plaintiff not taking his medication. *Id.* 20, 181.

7

Case 5:08-cv-00165-D   Document 24   Filed 12/31/08   Page 7 of 16

In addition, plaintiff reported having intermittent low back pain, which increased with bending, prolonged sitting, and walking, and which he had purportedly experienced for the prior two to three years. *Id.* 20, 179. He stated he had not seen a physician for the pain or taken medication for it. *Id.* 20, 179. Moreover, the musculoskeletal examination produced normal results. *Id.* 20, 181, 183. Dr. Ahmed also found that plaintiff's neurological examination was intact and that he had good mobility. *Id.* 182.

In addition, plaintiff was negative for edema in his extremities, as he was when examined by Dr. Bhatti. *Id.* 20, 181. There is no indication that any such edema, if it existed, would place disabling limitations on plaintiff.

Dr. Ahmed concluded that plaintiff's prognosis was good for gainful employment with ongoing medical management. *Id.* 20, 181. He found plaintiff capable of performing at least the equivalent of light work in a medical source statement form he completed on plaintiff's ability to perform work-related activities. *Id.* 20, 184-90.[3]

This evidence is supplemented by records of a number of visits by plaintiff to the WATCH Mobile Unit ("WATCH clinic"), a local free medical clinic in plaintiff's area, between February

---

[3] Plaintiff argues that the evaluation by Dr. Ahmed should be disregarded because, according to plaintiff, Dr. Ahmed spent only five minutes with him and, as Dr. Ahmed's notes reflect, Tr. 181, Dr. Ahmed did not have plaintiff's records available for review. Although at the hearing plaintiff's counsel stated that plaintiff would testify that the visit with Dr. Ahmed lasted only five minutes, *id.* 200, such testimony was not elicited or provided. In addition, it seems unlikely that Dr. Ahmed could have taken a history from plaintiff and performed the various examinations of plaintiff reflected in his report in the span of only five minutes, particularly without the benefit of plaintiff's records. *See id.* 178-90. The ALJ did not make a finding that the visit lasted five minutes. However, in light of the contention that the visit was so brief, the ALJ analyzed the evidence both with and without Dr. Ahmed's report. He states that "putting aside Dr. Ahmed's report . . . [I] still conclude that the other medical evidence alone supports the conclusions drawn in this decision." *Id.* 20. The court does not believe the allegation regarding the duration of the visit with Dr. Ahmed or the unavailability of plaintiff's records to Dr. Ahmed required the ALJ to disregard Dr. Ahmed's report entirely, although these considerations could bear on the weight given it. It therefore was not error for the ALJ to consider the report. In any event, the court finds that substantial evidence supports the ALJ's RFC determination whether or not Dr. Ahmed's findings are considered.

8

2004 and April 2005. *Id.* 135-38. None of these records indicate that any of plaintiff's impairments is of a disabling nature.

In addition, physical RFC assessment forms which were completed by state agency consulting physicians in April 2005 (*id.* 145-52) and July 2005 (*id.* 153-60) based on their review of plaintiff's file found him capable of performing at the medium and light work levels, respectively. *Id.* 146, 154. The medium exertional level is, of course, one level higher than the light work level. *See* 20 C.F.R. §§ 404.1567(c) (definition of medium work), 416.967(c) (same).

At the hearing, plaintiff testified about his alleged need to lie down for hours each day, limited mobility from back pain, and other limitations purportedly arising from his impairments. Tr. 207-14. He also testified, however, that he was able to walk "a couple of miles" with occasional stops. *Id.* 213. As discussed in the next section below, the ALJ lawfully determined that plaintiff's allegations regarding the intensity and persistence of his symptoms are not entirely credible.

In his decision, the ALJ discusses the foregoing evidence with the exception of the RFC assessment forms. *Id.* 18-21. The lack of discussion of this evidence is not improper because an ALJ is not required to discuss every piece of evidence contained in the record. *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989). It is apparent from the ALJ's decision that he also considered the other evidence in the record, as he repeatedly states that he did. *See id.* 16, 18, 21 ¶ 5. The ALJ's consideration of the evidence in connection with his RFC analysis, including in particular the medical evidence, was in conformance with the applicable Regulations.[4] *See* 20 C.F.R. §§ 404.1527

---

[4] Plaintiff suggests that the ALJ should have made a finding that plaintiff was obese, citing the weight of 243 pounds and height of 5 feet 11 inches recorded for him at his examination by Dr. Ahmed. Tr. 180. Dr. Ahmed did not make a finding of obesity and no other provider appears to have done so. The ALJ recited the foregoing weight and height in his decision. *Id.* 20. The court finds that the ALJ's consideration of plaintiff's weight was lawful. *See* Soc. Sec. R. 02-1p, 2000 WL 628049 (12 Sept. 2002) (evaluation of obesity).

9

(evaluation of opinion evidence), 416.927 (same); Soc. Sec. R. 96-6p, 1996 WL 374180 (2 July 1996) (evaluation of findings by state agency consultants). The court concludes that the ALJ's RFC determination is in all respects lawful.

### D. Assessment of Plaintiff's Credibility

As noted above, this court is not permitted to make credibility assessments, but must determine if the ALJ's credibility assessment is supported by substantial evidence. *Craig*, 76 F.3d at 589. The ALJ's assessment involves a two-step process. *Id.* 594-95 (discussing 20 C.F.R. §§ 404.1529(c), 416.929(c) (evaluation of symptoms)). First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms. *Id.* The ALJ made such a finding here. Tr. 21. Next, the ALJ must evaluate plaintiff's statements concerning those symptoms. *Craig*, 76 F.3d at 595. If the ALJ does not find plaintiff's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "grounded in the evidence." *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006) (quoting Soc. Sec. R. 96-7p, 1996 WL 374186, at *2 (2 July 1996)).

Here, the ALJ determined that "the evidence does not support the claimant's allegations of the intensity and persistence of . . . [the] pain and other symptoms" he alleges. Tr. 21. The ALJ cited three principal bases for this determination: the objective medical findings, plaintiff's inconsistent statements regarding his use of tobacco and alcohol, and his noncompliance with prescribed treatment, including medical care and medication. *Id.* The court will examine in turn each of these reasons relied on by the ALJ.

As discussed above, there is a dearth of objective medical findings supporting plaintiff's allegations that his impairments prevent him from engaging in work activities. The absence of such

10

evidence is a proper basis for discounting the credibility of a claimant's allegations. *Craig*, 76 F.3d at 595-96 (discussing 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)).

Regarding plaintiff's inconsistencies, the ALJ points to the discrepancy between plaintiff's statement to Dr. Bhatti in April 2005 that he stopped smoking after his heart attack in January 2005 and his statement to Dr. Ahmed in July 2007 that he has smoked five to ten cigarettes per day for the past fifteen years. *Id.* 21, 178, 180; *see also* 108 (statement to Wayne Hospital Emerg. Dept. in Jan. 2005 that he rarely smokes). Similarly, he told Dr. Ahmed during the July 2007 evaluation that he had not been drunk in the past six years, but that statement conflicts with other statements by plaintiff.[5] *Id.* 21, 179. For instance, he stated to the Wayne Hospital Emergency Department in January 2005 that he drinks regularly. *Id.* 108. Previously, in May 2003, he had told the same facility that he drank several beers a day. *Id.* 191; *see also id.* 104-05 (plaintiff had elevated alcohol level of 218 when seen at the Wayne Hospital Emergency Dept. on 14 Jan. 2005). A court may properly base its determination regarding a claimant's credibility on inconsistencies in his statements. *Russell v. Chater*, 60 F.3d 824 (Table), 1995 WL 417576, at *4 (4th Cir. 7 July 1995).

Ordinarily, a court may also properly consider noncompliance by a claimant with prescribed treatment and failure to obtain treatment in evaluating a claimant's credibility. *See Davis v. Apfel*, 162 F.3d 1154 (Table), 1998 WL 559728, at *1 (4th Cir. 2 Sept. 1998) (per curiam) (failure to obtain treatment); *Stephens v. Comm'r*, C.A. No. 2:06-3123-GRA, 2008 WL 68852, at *12 (D.S.C. 4 Jan. 2008) (failure to follow prescribed treatment) (citing *Preston v. Heckler*, 769 F.2d 988, 990 n.1 (4th

---

[5] After finding that plaintiff provided varying reports regarding when he last consumed alcohol, the ALJ refers to plaintiff stating that he had stopped drinking 15 years ago. Tr. 21. The court was unable to locate this particular statement in the record but, as detailed above, there is other substantial evidence supporting the finding that plaintiff gave inconsistent reports about his alcohol use.

11

Cir. 1985)); *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *id.* §§ 404.1530 (failure to follow prescribed treatment without good reason precludes finding of disability), 416.930 (same); Soc. Sec. R. 96-7p, 1996 WL 374186, at *7-8. Here, the record shows that plaintiff failed to follow the prescribed treatment regimen. Although plaintiff was advised to stop smoking after his January 2005 hospitalization, he admitted to continuing smoking, as just discussed. Tr. 119, 180. The record also shows that plaintiff failed to stay under the care of a physician, as he was advised to do. *Id., e.g.,* 119, 142, 179. He reported to Dr. Ahmed that he did not see any physician for his back pain and therefore did not take any prescription medication for it. *Id.* 179. At the hearing, he testified initially that he continued not to take any medication for his back pain, but later said that he took Aleve.[6] *Id.* 207, 213. In addition, he failed to take prescribed medications for his heart condition. *Id., e.g.,* 135 (4 Apr. 2005), 178 (27 Oct. 2005), 180 (23 July 2007), 207 (plaintiff's 11 Oct. 2007 hearing testimony).

Plaintiff contends that the ALJ erred in relying on plaintiff's failure to see physicians and take medication because it resulted from plaintiff's inability to pay for such care. The Fourth Circuit has recognized that a claimant's failure to obtain medical treatment that he cannot afford cannot justify an inference that his condition was not as severe as he alleges. *Mickles v. Shalala,* 29 F.3d 918, 930 (4th Cir. 1994) (citing *Lovejoy v. Heckler,* 790 F.2d 1114, 1117 (4th Cir. 1986)). At the same time,

---

[6] The ALJ found in his decision that "[r]egarding his back pain, the claimant again related that he was not receiving care and took no medication for it, which would include even an over-the-counter pain reliever." Tr. 21. Plaintiff assumes that the ALJ was referring to plaintiff's hearing testimony and contends that the ALJ mischaracterized the testimony because of plaintiff's reference to taking Aleve. Assuming that the ALJ was referring to plaintiff's hearing testimony, the ALJ's finding may well reflect not an error, but the ALJ's reconciliation of the inconsistency in plaintiff's testimony regarding whether he was taking medication for his back pain. Even if the ALJ's finding was based on a misunderstanding of plaintiff's testimony, such an error would not be material in light of the relatively modest relief obtainable from an over-the-counter medication such as Aleve, plaintiff's undisputed failure to see a physician regarding his back pain, and the other evidence bearing on plaintiff's credibility.

12

"an unexplained inconsistency between the claimant's characterization of the severity of . . . [his] condition and the treatment . . . [he] sought to alleviate that condition is highly probative of the claimant's credibility." *Id.*

There is no question that plaintiff has limited resources to pay for medical care. He is on food stamps, but was denied Medicaid coverage. *Id.* 136, 208; *see also id.* 202 (plaintiff's friend's sister has been letting plaintiff live in her home for past five months). He testified at the hearing that he was unable to afford medical care[7] and made the same claim repeatedly to medical providers. *Id.* 135, 178, 180, 181, 207-08. The ALJ acknowledged plaintiff's contention of inability to pay in his analysis of plaintiff's credibility. *Id.* 21.

The question presented is whether plaintiff's indigency deprived him of access to the medical care prescribed for him. The ALJ found, in essence, that it did. He points to the availability to plaintiff of low-cost facilities and the health department. *Id.* 21.

The court finds that there is substantial evidence in the record to support the determination that plaintiff retained access to treatment by physicians notwithstanding his indigency. As previously discussed, he received treatment for his heart condition at Wayne Hospital and WakeMed in January 2005 and again at WakeMed in October 2005.[8] Plaintiff also obtained care on repeated occasions at the WATCH clinic between February 2004 and April 2005. *Id.* 135-38 (showing visits or other contacts in Feb. 2004, and Jan., Feb., Mar., and Apr. 2005). He did not raise the issue of his back pain at such visits, but that appears to have been his choice. "[He] has preferred to confine his

---

[7] Although a portion of plaintiff's testimony regarding his efforts to obtain free care are identified as inaudible in the hearing transcript, Tr. 208, the ALJ's decision summarizes his testimony, *id.* 20, and plaintiff raises no objection that the hearing transcript is incomplete.

[8] Plaintiff had also received care at Wayne Hospital in 2000, 2001, and 2003. Tr. 191-94.

13

complaints at those visits to his most pressing problems: cardiac distress and hypertension."[9] Plf.'s Mem. (DE #17-2) at 9. In addition, plaintiff's wife offered him financial assistance for medical care, but he refused. *Id.* 89.

The record is not as clear as to whether plaintiff had access to prescribed medications. He reported to the WATCH clinic in March 2005 that he sought assistance for his medications from numerous churches and another source without success. *Id.* 137. He also made several efforts to obtain medications through the WATCH clinic, but appears not to have followed through on them. For example, in January 2005 plaintiff apparently completed a pharmacy assistance sheet at the clinic, but did not follow up on it despite a call from the clinic to do so. *Id.* 135. In February 2005, he came to the clinic for medications, but did not wait to be seen. *Id.* 137. The record does not establish the extent to which the WATCH clinic would have been able to provide plaintiff assistance with his medications had he pursued the matter. In addition, as discussed, plaintiff's wife offered him financial assistance for medical care but he refused it. *Id.* 89. The government claims that this and the other evidence of record shows that plaintiff failed to meet his purported burden of exploring all possible resources and documenting his contacts with them, and that his noncompliance with the medication regimen may properly be a basis for discounting his credibility. *See* Soc. Sec. R. 82-59 ¶ 4, 1982 WL 31384, at *4 ¶ 4 (30 Nov. 1981).

---

[9] The website for the North Carolina Association of Free Clinics, of which the Watch clinic is a member, states:

> WATCH Mobile Medical Unit travels to 20 predetermined locations each month to provide *primary and acute* health care to the uninsured population of Wayne County. All medical visits, including necessary lab work, are provided free of charge to the uninsured persons residing in Wayne County.

http://www.ncfreeclinics.org/ClinicProfile.aspx?ClinicID=2c433396-0b71-4176-b8a8-631eb96b2314 (emphasis added). Plaintiff resides in Goldsboro, which is in Wayne County.

The court finds that it need not resolve the issue whether the ALJ's reliance on plaintiff's noncompliance with the prescribed medication regimen was lawful. Even if the evidence regarding such noncompliance is disregarded, the ALJ's finding on credibility is supported by substantial evidence in the record.[10]

Plaintiff contends that the ALJ erred by failing to discuss each of the seven factors bearing on credibility listed in Soc. Sec. R. 96-7p, 1996 WL 374186, at *3, as well as in the Regulations, 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).[11] However, these authorities require that the ALJ consider these factors, not that he discuss each of them. The decision shows that the ALJ did consider these factors. Indeed, each is actually discussed at some point in the decision.

Moreover, the fact that the ALJ found plaintiff capable of only light work, rather than work at a higher exertional level, substantiates that he did not discount plaintiff's allegations entirely. For this and the other reasons stated, the court finds that the ALJ's credibility determination is lawful.

---

[10] In determining whether substantial evidence supports the ALJ's RFC determination, the court has considered whether there was sufficient evidence in the record for the ALJ to make a decision regarding disability, particularly evidence regarding plaintiff's alleged back pain. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). The court finds that there was sufficient evidence, including, with respect to plaintiff's back pain, the consultative examinations of plaintiff and plaintiff's history regarding treatment of his back.

[11] These factors are:

1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Soc. Sec. R. 96-7p, 1996 WL 374186, at *3.

The court has considered the other arguments advanced by plaintiff challenging the ALJ's decision, but finds them meritless as well.

### III. CONCLUSION

For the foregoing reasons, the court concludes that the ALJ applied the proper legal standards and that his decision is supported by substantial evidence. IT IS THEREFORE RECOMMENDED that the Commissioner's motion for judgment on the pleadings be ALLOWED, plaintiff's motion for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten business days, or such other period as the presiding District Judge directs, to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

This, the 31st day of December, 2008.

James E. Gates
United States Magistrate Judge